IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00801-PAB-KLM

KEITH TRUMAN,

    Plaintiff,

v.

BRANNAN SAND AND GRAVEL CO.,

    Defendant.

**ORDER**

This matter is before the Court on the Motion for Summary Judgment [Docket No. 43] filed by defendant Brannan Sand and Gravel Co. ("Brannan"). The motion is fully briefed and ripe for disposition. For the reasons detailed below, the Court grants the motion for summary judgment.

## I. STANDARD OF REVIEW AND THE NON-MOVANT'S BURDEN

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *see also Ross v. The Board of Regents of the Univ. of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty*

*of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id*.; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

The Local Rules and this Court's Practice Standards are designed to identify the existence of disputes over genuine issues of material fact.  Rule 56.1 of the Local Rules requires that summary judgment motions include a statement of undisputed facts.  D.C.COLO.LCivR 56.1.A.  Practice Standard III.F.3.b.iv of this Court requires that a party opposing summary judgment must admit or deny, in separately numbered paragraphs, the movant's assertions of material facts.  Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.  "Any denial shall be accompanied by a **brief** factual explanation. . . and a **specific reference** to material in the record supporting the denial."  *Id.* (emphasis in original).

Mr. Truman, as the nonmoving party, "may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof."  *Travis v. Park City Mun. Corp.,* 565 F.3d 1252, 1258 (10th Cir. 2009).  Mr. Truman has failed to do so.  He does not specifically admit or deny defendant's statement of undisputed material facts, in violation of Practice Standard III.F.3.b.iv.  Moreover, plaintiff's opposition to defendant's summary judgment motion, while repeatedly citing plaintiff's deposition transcript in

footnotes, fails to attach the pages of the transcript that he cites.[1]  Not only does such failure violate the Court's Practice Standards, but it obviously deprives the Court of the ability to determine whether many of the challenged facts are disputed.  In addition, plaintiff asserts that "other witnesses will testify" on his behalf at trial, without identifying these witnesses or explaining the substance of their testimony, *see* Docket No. 50 at 10, which also violates the Court's Practice Standards.  *See* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.

When the party moving for summary judgment claims that there is not a genuine issue for trial because a material fact is undisputed, the nonmoving party must do more than recite arguments in response.  Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.  *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); Fed. R. Civ. P. 56(e).  In the absence of such specific reference, the Court considers any unchallenged fact as undisputed because the Court is not required to search the record in an effort to determine whether evidence exists which might require submission of the case to a jury.  *See* Fed. R. Civ. P. 56(e); D.C.COLO.LCivR 56.1A; Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.v.

---

[1] Although defendant attaches a portion of Mr. Truman's deposition, plaintiff cites many pages from Mr. Truman's deposition that are not attached to defendant's summary judgment motion.

## II. BACKGROUND[2]

### A. History of Plaintiff's Employment

This case arises out of Keith Truman's termination by Brannan. Mr. Truman, who is African-American, was a cement delivery driver for Brannan. Mr. Truman was an at-will employee paid on an hourly basis whose regular duties included driving cement trucks to designated work sites. Brannan employed Mr. Truman for two separate periods: the first from May 19, 2005 until March 30, 2007, and the second from August 6, 2007 until September 6, 2007.

On December 31, 2007, Mr. Truman filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated because of his race, age, and color.[3] Mr. Truman also claimed that Brannan had discriminatory promotion policies and that he faced retaliation for reporting incidents of discrimination. On January 27, 2010, the EEOC issued Mr. Truman a right to sue letter. On April 8, 2010, Mr. Truman filed this lawsuit alleging that Brannan violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.

### B. Plaintiff's Claims

#### *1. Discrimination Based on Race*

Mr. Truman alleges that he was subject to discrimination while employed at Brannan on account of his race. Mr. Truman claims that Brannan chose to terminate Mr. Truman's employment rather than regulate employees' use of the racially

---

[2]The following facts, unless otherwise indicated, are not in dispute.

[3]Plaintiff abandoned his claim regarding discrimination based on age. *See* Docket No. 43-2 at 10 (Truman Dep. 85:18-21).

derogatory words "nigger" and "blueblack."  Docket No. 3 at 3.  Mr. Truman asserts that, when he voiced his opinion, he was told to "keep quiet" and eventually was terminated for complaining too much.  Docket No. 3 at 3-6.  To support this claim, Mr. Truman cites to four specific incidents.

First, Mr. Truman alleges that sometime during his first period of employment with Brannan, as he returned his truck into the work site, he heard Tony Baranowski, the man in charge of quality control, state "why are these niggers coming through this gate?"  Docket No. 43-2 at 3 (Truman Dep. 38:15-17).  Although this statement was not directed at Mr. Truman, Mr. Baranowski apologized to Mr. Truman for making the comment in his presence.  *Id*. (Truman Dep. 39:17-19).  After the incident, Mr. Truman reported the episode to his truck boss, Will Washington, and the plant manager, Jason Donati.  *Id*. (Truman Dep. 40:11-25).

The second incident involved Mr. Truman and John Thorne, another African-American employee.  In this particular instance, Mr. Truman was in a company truck with Mr. Thorne when Mr. Donati approached the truck and said, "nigger, you smell like french fries."[4]  Docket No. 43-2 at 6 (Truman Dep. 59:16-19).  The statement was directed at Mr. Thorne.  *Id*. (Truman Dep. 60:5-8).  Mr. Truman tried to convince Mr. Thorne to report the incident; however, Mr. Thorne refused.  *Id*. (Truman Dep. 60:16-20).

---

[4]This statement is a quote from an American television comedy called "Chappelle's Show."  This particular quote is from a skit entitled "Calvin Gets a Job at WacArnold's," which mocks a 1990 McDonald's commercial that portrays a food restaurant offering jobs to disenfranchised youth.  *Chappelle's Show*: *Ep. #202* (Comedy Central broadcast Jan. 28, 2004).

A third incident occurred at the company's dispatch office. As Mr. Truman and Mr. Thorne waited with several other employees in the dispatch office, Kenny Green, a fellow employee, entered the office through a door rarely in use. When Mr. Green entered the office, Chris Baranowski, who worked dispatch, stated "Y'all niggers got to stop coming in through this door." Docket No. 43-2 at 7 (Truman Dep. 63:20-64:21). Chris Baranowski immediately apologized for making this comment. *Id*. (Truman Dep. 64:20-25). Mr. Truman admits that this was the first time he heard Chris Baranowski use the word "nigger." *Id*. Mr. Truman again reported the incident to management. *Id*. (Truman Dep. 63:1-10).

The final incident did not involve the use of the word "nigger"; instead, Mr. Truman was called a "blueblack" by Topo, a Hispanic co-worker. Docket 43-2 at 19 (Truman Dep. 143:25-144:2). Mr. Truman alleges that Topo referred to him as "blueblack"[5] over the truck radio, which was reserved for official communications. *Id*. Mr. Truman claims that despite his report to management, Topo did not cease using that term. *Id*. (Truman Dep. 142:12-15).

Plaintiff asserts that management failed to take any action when he reported the alleged racial abuse. Docket No. 77 at 2. Plaintiff states that Brannan's failure to adequately respond to his complaints was discriminatory and that he was terminated on March 30, 2007 for "complaining too much." Docket No. 3 at 6. Mr. Truman admits that

---

[5] Plaintiff asserts that "blueblack" is not a conventional racial slur; it is an insult that stands for the proposition that someone's skin is so dark that he or she is almost blue or purple as opposed to black. Docket No. 50 at 6.

all of the claims related to discrimination occurred during his first period of employment with Brannan. Docket No. 43-2 at 19 (Truman Dep. 143:23-144:7).

### 2. *Retaliation Claim*

Mr. Truman alleges that, as a consequence of reporting his co-workers' use of discriminatory language to management, he was subject to various forms of retaliation. First, Mr. Truman alleges that Chris Baranowski scheduled him for a shift every morning, as opposed to rotating morning shifts between employees, which was the norm. Docket No. 43 at 6; Docket No. 50 at 5[6]. Additionally, Mr. Truman alleges Tony Baranowski falsely accused him of causing damage to one of the company's trucks, Docket No. 43-2 at 3 (Truman Dep. 37:20-38:17), and ceased all forms of communication or social interaction with plaintiff. Docket No. 43-2 at 4 (Truman Dep. 41:9-11). Moreover, Mr. Truman states that he was scheduled to work more hours than other employees and that Tammy Edelen, the person in charge of dispatch, would give him more work in hopes that he would ruin a load, thereby giving the company just cause to terminate his employment. Docket No. 43-2 at 10 (Truman Dep. 86:12-23). Finally, Mr. Truman asserts that the dispatchers regularly ignored the company's "first truck in, first truck out" rule and required that he make consecutive runs even if there were other trucks available. Docket No. 3 at 6.

Despite these allegations, Mr. Truman admits that he did not receive less favorable assignments because of his race and was not required to work longer hours as a result of his race. Docket No. 43-2 at 8 (Truman Dep. 73:16-23). It is also not

---

[6]Defendant and plaintiff cite Mr. Truman's deposition for this proposition; however, the relevant pages are not attached to either party's filings.

7

disputed that Ms. Edelen was rude to all employees and that she was terminated as a result of complaints filed by several customers. Docket No. 43-4 at 3 (Edelen Dep. 38:4-19). Additionally, Mr. Truman admits that drivers with seniority held certain rights over other drivers, such as being able to leave the work site early or leaving less desirable tasks to drivers with less seniority. Docket No. 43-2 at 2 (Truman Dep. 31:16-22).

### 3. *Discriminatory Promotion Policies Claim*

Mr. Truman states that the number of black managers was disproportionate when compared to the overall number of minority workers at Brannan. Docket No. 3 at 3. Plaintiff asserts that he was never late for work, did not have attendance problems, and that, despite his professionalism, he was never considered for a promotion. *Id*. Moreover, he states that whenever employees endorsed a black candidate for promotion, the black person's application was never accepted. Docket No. 43-2 at 9 (Truman Dep. 80:6-15). Mr. Truman claims that Brannan's failure to promote black employees was discriminatory because it appeared as though "if you were black at this company, there was no room for promotion." Docket No. 3 at 3. However, Mr. Truman also admits that he never formally applied for a promotion, but merely expressed interest in a promotion to his supervisor. Docket No. 43-2 at 26 (Truman Dep. 181:8-10).

### 4. *Hostile Work Environment Claim*

Mr. Truman does not specifically allege a hostile work environment claim; however, the pleadings suggest that plaintiff may be making such a claim. Moreover, defendant's summary judgment motion addresses the possibility of plaintiff asserting a

hostile work environment claim. Docket No. 43 at 2. Reviewing Mr. Truman's claims liberally, despite the fact that he was represented by counsel at the time, the Court will assume that plaintiff alleges that he was subject to a hostile work environment because of the repeated use of the word "nigger" at Brannan's worksite and due to Brannan's failure to stop one of its employees from using the term "blueblack" over the company's radio system.

## III. ANALYSIS

Mr. Truman asserts claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 2000e-3(a) bans employers from retaliating against an employee because the employee has opposed such unlawful employment discrimination. Mr. Truman contends that defendant engaged in unlawful race discrimination, retaliated against him in violation of Title VII, had discriminatory promotion practices, and subjected him to hostile working conditions.[7]

### A. Discrimination on Account of Race

A plaintiff may prove a violation of Title VII or 42 U.S.C. § 1981 either by direct evidence of discrimination or by adhering to the burden-shifting framework[8] of

---

[7] Mr. Truman also brings claims for racial discrimination and retaliation pursuant to 42 U.S.C. § 1981.

[8] The "same standards and burdens apply . . . to claims brought under 42 U.S.C. § 1981" as to claims brought under Title VII. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir. 2005). "[T]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Mr. Truman has pointed to no direct evidence of race discrimination. Thus, for Mr. Truman to survive summary judgment under the *McDonnell Douglas* burden shifting analysis, he must first make out a prima facie case of employment discrimination. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

"[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.,* 432 F.3d 1169, 1173 (10th Cir. 2005)). If Mr. Truman successfully makes out a prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for the adverse action. *Garrett*, 305 F.3d at 1216. If Brannan can offer such a reason, Mr. Truman must then provide evidence showing that race was a "determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id*.

There is no dispute that Mr. Truman, who is African-American, belongs to a protected class and that his termination was an adverse employment action. Therefore,

to make out a prima facie case, Mr. Truman need only identify evidence showing that Brannan's conduct "took place under circumstances giving rise to an inference of discrimination." *PVNF*, 487 F.3d at 800. Based on the record, Mr. Truman has failed to meet this burden. Mr. Truman does not provide evidence that supports an inference that Brannan terminated him because of his race as opposed to other non-discriminatory reasons. First, Mr. Truman admits that he did not receive less favorable assignments simply because of his race. Docket No. 43-2 at 8 (Truman Dep. 73:20-74:4). He also concedes that he was not required to work longer hours because of his race. *Id*. Additionally, Mr. Truman fails to provide evidence showing a link between the discriminatory conduct and his termination. Thus, even considering the evidence in a light most favorable to Mr. Truman, there is simply no evidence to show that the decision to terminate him on March 30, 2007 took place under circumstances giving rise to an inference of discrimination. Therefore, defendant is entitled to summary judgment on plaintiff's Title VII claim of unlawful discrimination based on race and color.

### B.  Retaliation

To establish a prima facie case of retaliation, a plaintiff must establish three elements: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1264-65 (10th Cir. 2007) (citation omitted). A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed

by adverse action" and "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *See Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir. 1997).

Here, it is clear that Mr. Truman's reports to management regarding the use of racial epithets is protected activity. *See* 42 U.S.C. § 2000e-3. Thus, the question is whether Mr. Truman faced "adverse employment action." *Jencks*, 479 F.3d at 1264-65. The Tenth Circuit has "liberally define[d] the phrase 'adverse employment action'" and takes "a case-by-case approach, examining the unique factors relevant to the situation at hand." *Hillig v. Rumsfeld,* 381 F.3d 1028, 1031 (10th Cir. 2004) (citations omitted). In general, "[o]nly 'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' will rise to the level of an adverse employment action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (citations omitted). However, the term "adverse employment action" is not necessarily limited to such acts. *Hillig*, 381 F.3d at 1031 (noting that an employer's action that causes "harm to future employment prospects," such as a negative job reference, can be considered an adverse employment action (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986–87 (10th Cir.1996))). Although the term is not confined to, for example, "monetary losses in the form of wages or benefits[,] . . . 'a mere inconvenience or an alteration of job responsibilities'" does not constitute an "adverse employment action." *Sanchez v. Denver Pub. Schs.,* 164 F.3d

527, 532 (10th Cir. 1998). Accordingly, a plaintiff must show that the alleged adverse action caused more than "*de minimis* harm" to or a "*de minimis* impact" upon an employee's job opportunities or status. *Hillig*, 381 F.3d at 1033.

Although it is unclear from the record which actions Mr. Truman alleges were retaliatory, it appears as if plaintiff is alleging that Brannan took the following retaliatory adverse employment actions: (1) Mr. Truman's termination on March 30, 2007; (2) Chris Baranowski scheduling Mr. Truman for every morning shift contrary to the company norm; (3) Tony Baranowski's allegedly false complaint that Mr. Truman caused damage to one of the company's trucks; and (4) Tammy Edelen increasing Mr. Truman's working hours.

### *1. Mr. Truman's Termination*

If Mr. Truman was terminated on March 30, 2007 because he reported his fellow employees' use of racial epithets, then this termination would qualify as adverse employment action. *See Hillig*, 381 F.3d at 1032-33. However, the record is devoid of any evidence–direct or otherwise–that could support a causal connection between Mr. Truman's reports and his subsequent termination. Mr. Truman alleges that he verbally reported the use of racial epithets to management, but does not provide approximate dates or even details of specific conversations despite the fact that such evidence is primarily within his control. Without more evidence, it is impossible to determine whether there is a causal connection between Mr. Truman's reports and his subsequent termination. Mr. Truman cannot rely on his pleadings, but must set forth specific facts to show that there is a genuine issue of material fact for trial. *Travis*, 565 F.3d at 1258.

Mr. Truman's failure to provide any evidence means that he has failed to satisfy his burden. Thus, even though temporal proximity alone can establish a prima facie case of retaliation, *see Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (holding that close temporal proximity of two weeks between protected activity and termination was "alone sufficient to establish a causal connection"), this is not one of those cases. *See Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (finding that a time period of three months is, by itself, insufficient to establish causation).

### 2. *Chris Baranowski's Actions*

As noted above, for an action to qualify as an adverse employment action, it needs to rise above a "mere inconvenience or an alteration of job responsibilities." *Sanchez*, 164 F.3d at 532. Mr. Truman asserts that, as a result of reporting Mr. Baranowski's racial remark, he was forced to work the morning shift every day contrary to the company's regulations. Mr. Truman does not assert that this action altered his salary, his benefits, or that it significantly changed his responsibilities. On the contrary, the result of this action was simply to cause plaintiff to arrive at work at an earlier time on certain days. This result, however, is not enough to justify a finding of retaliation under Title VII because it is not a unique circumstance leading to a significant change in Mr. Truman's employment. *See Sanchez*, 164 F.3d at 532 (finding that increasing a teacher's commute from five to forty-five minutes is not enough to establish adverse employment action).

### 3. Tony Baranowski's Report

Plaintiff alleges that Tony Baranowski falsely reported that plaintiff damaged one of the company trucks. However, Mr. Truman does not show how Mr. Baranowski's action constitutes adverse employment action. Mr. Truman does not show that he was terminated because of this report, or that he suffered a decrease in salary, benefits, or responsibilities. Mr. Truman has not shown what impact, if any, Mr. Baranowski's action had on his job opportunities or status as an employee. Thus, without more, Mr. Truman's evidence is insufficient to support a finding of adverse employment.

### 4. Tammy Edelen's Actions

Mr. Truman alleges that, as a consequence of his reports, Ms. Edelen scheduled him to work more hours than other employees. He also claims that his truck was often sent on consecutive runs, while other truck drivers were allowed to rest with their trucks at the Brannan site. Moreover, he alleges that Ms. Edelen intimidated him and tried to find cause to terminate his employment.

Mr. Truman fails to show that any of Ms. Edelen's behavior constitutes adverse employment action. First, because Mr. Truman was compensated based on an hourly wage, it is difficult here to categorize an increase of work hours as an adverse employment action. Second, Mr. Truman states that he was sent on consecutive runs while others were allowed to rest, but he also admits that drivers with seniority were allowed certain privileges. Docket No. 43-2 at 2 (Truman Dep. 31:11-18). He does not dispute that he could have been given extra work because he was a good driver or because the other drivers present at the Brannan site were senior drivers. *Id*. Finally, Mr. Truman's claim that Ms. Edelen tried to find a way to terminate his employment

15

through intimidation is belied by the fact that Ms. Edelen had a reputation of being rude to everyone. In fact, Brannan terminated Ms. Edelen because of complaints by Brannan's customers. Docket No. 43-4 at 3 (Edelen Dep. 38:4-10). Thus, under the circumstances, the actions taken by Ms. Edelen do not constitute retaliation under Title VII.

In conclusion, nothing in the record supports an inference that Brannan retaliated against Mr. Truman because he engaged in protected activity. Thus, defendant is entitled to summary judgment on plaintiff's retaliation claim.

### C. Failure to Promote

A plaintiff may establish a prima facie case of a failure to promote under Title VII by showing that: (1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted or transferred despite his qualifications; and (4) the position was filled or remained open after he was rejected. *Jaramillo v. Colo. Judicial Dept.,* 427 F.3d 1303, 1306-07 (10th Cir. 2005). It is undisputed that plaintiff is a member of a protected class. However, it is also undisputed that plaintiff did not apply for a promotion. Instead of applying for a promotion, plaintiff merely expressed interest in a promotion to his supervisors. Docket No. 43-2 at 26 (Truman Dep. 181:8-10). Plaintiff provides no evidence to show that formal applications were not required for candidates to be eligible for promotions. Mr. Truman's only evidence to support this claim is his subjective belief that telling one of Brannan's managers that he would like to be promoted was enough for him to deserve a promotion. This is insufficient to carry plaintiff's burden. Thus, defendant is entitled to summary judgment on plaintiff's failure to promote claim.

**D. Hostile Work Environment**

To survive a summary judgment motion on a hostile work environment claim, a "plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004) (internal quotation marks omitted). Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (listing factors to be considered in determining whether environment is hostile or abusive). A plaintiff must also submit evidence allowing a jury to infer that he was harassed due to his race. *Id*. A plaintiff cannot meet this burden by demonstrating "a few isolated incidents of racial enmity" or "sporadic racial slurs." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations omitted). Instead, "there must be a steady barrage of opprobrious racial comments." *Id*.

Mr. Truman identifies four incidents which may suggest that Brannan's workplace was a hostile work environment: Tony Baranowski, Jason Donati, and Chris Baranowski separately using the word "nigger" in his presence and Topo calling him "blueblack" over the company's radio system. Although Mr. Truman provides evidence

17

of racial insensitivity within the workplace, Mr. Truman has failed to show that this conduct was directed at him because of racial animus.

First, during his first period of employment at Brannan, Mr. Truman heard derogatory remarks a total of four times, with the "blueblack" reference being the only one specifically directed at plaintiff. *See Chavez*, 397 F.3d at 832 (finding that two racially motivated comments fall far short of the "steady barrage" required for a hostile environment claim). Additionally, two of the four employees who used a racial epithet in his presence immediately apologized. Further, Mr. Truman's work conditions were not severely altered by these incidents. Mr. Truman admitted that he enjoyed working at Brannan and that he otherwise had plans to retire in defendant's employ. *See Shaw v. Tulsa Dynaspan Arrow Concrete*, 408 F. App'x 177, 179 (10th Cir. 2011) (finding that racially offensive text messages and the use of the word "nigger" not directed at plaintiff was insufficient evidence of race discrimination to create a triable issue of fact). In light of the foregoing, this evidence alone fails to establish that the behavior of four Brannan employees created a steady barrage of opprobrious racial comments that permeated the work force enough to create a racially hostile environment. *See Chavez*, 397 F.3d at 833 ("Title VII is not a code of workplace conduct . . . a hostile environment claim requires a showing not only of severe and pervasive harassment, but of severe and pervasive harassment based on [race].").

Consequently, although the derogatory words plaintiff was subjected to are regrettable, they fall far short of "'a steady barrage of opprobrious racial comment[s],' as required to show a racially hostile work environment." *Bolden v. PRC Inc.,* 43 F.3d 545,

551 (10th Cir. 1994). Therefore, defendant is entitled to summary judgment on plaintiff's claim regarding a hostile work environment.

## IV. CONCLUSION

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment with Integrated Brief [Docket No. 43] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of defendant Brannan Sand and Gravel Co., and against plaintiff Keith Truman. It is further

**ORDERED** that the Bench Trial scheduled for December 5, 2011 is hereby vacated.

DATED November 22, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge